# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUSTAVO VILLEGAS, | 1:10-cv-00997 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES D. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**RELEVANT HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in Butte County Superior Court in 1990 of second degree murder. He is serving a sentence of fifteen years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the California Board of Parole Hearings ("Board") violated his due process rights in its March 9, 2009, decision

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

finding Petitioner unsuitable for parole.  Petitioner contends he was denied his due process rights because the decision of the Board of Parole Hearings (Board) finding Petitioner presented an unreasonable risk of danger to society was not supported by any evidence.  He further argues the Board's denial was based on immutable factors.

Petitioner filed a habeas court petition challenging the Board's decision in the Butte County Superior Court on July 17, 2009.  The petition was denied on August 21, 2009.  Petitioner next filed a habeas petition in the California Court of Appeal, Third Appellate District, on September 17, 2009.  The appellate court denied the petition on September 25, 2009.  Petitioner then filed a habeas petition in the California Supreme Court on November 2, 2009.  The petition was summarily denied on April 22, 2010.

Petitioner filed the instant federal petition for writ of habeas corpus on June 4, 2010.  Respondent filed an answer to the petition on August 27, 2010.  Petitioner filed a traverse on September 16, 2010.

## STATEMENT OF FACTS[2]

Petitioner initiated a verbal altercation with the victim.  At the time, Petitioner had a handgun in his pocket.  His friend was standing nearby holding a rifle.  There was no evidence that the victim was armed.  During the argument, Petitioner withdrew his gun from his pocket, cocked it, and then returned it to his pocket.  As the victim was bending over to enter his car Petitioner shot him in the face from a very close distance.  Immediately after the shooting, Petitioner prevented the victim's friend from aiding him.  Petitioner fled, but before doing so, he removed the keys from the car in which the victim had arrived.

Petitioner told his probation officer that the victim intimidated him and humiliated him for about two months prior to the shooting.  He also stated in the past the victim had threatened Petitioner's life as well as his family.  Petitioner's girlfriend said she was not aware of any prior disputes between Petitioner and the victim.  She also testified that shortly before the shooting she heard the victim say he would kill Petitioner when he returned and that she had told the police

---

[2] This information is derived from the summary of the crime set forth in the Board's decision.

officer that the victim had told Petitioner to kill him then because the victim would kill Petitioner when he returned. Petitioner's girlfriend's sister also heard the victim make the latter statement. Petitioner entered his plea under an agreement which specified that Petitioner would plea to second degree murder and that the firearm use enhancement would be dismissed. At sentencing, the court denied probation.

## DISCUSSION

I.     Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.     Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme. Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an

>unreasonable risk of danger to society if released from prison.
>
>(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

>(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>>(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>>(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>>(C) The victim was abused, defiled or mutilated during or after the offense.
>>(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>>(E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
>(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
>(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
>(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
>(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
>(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

>(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

5

    (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

    (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

    (4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

    (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

    (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

    (7) Age. The prisoner's present age reduces the probability of recidivism.

    (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

    (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

    The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

    Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

     A.     State Court and Board Decisions

The superior court rendered the last reasoned decision and found some evidence supported the Board's determination. The Board found Petitioner unsuitable for parole based on the circumstances of the commitment offense, his past and present mental state and attitude toward the crime, his lack of insight, the psychological evaluation, and problematic parole plans.

The commitment offense involved Petitioner shooting the unarmed victim in the face during a verbal argument. The Board determined the motive for the crime was trivial. Cal. Code

Regs., tit. 15, § 2402(c)(1)(E). The Board noted Petitioner shot the victim because of an insult to Petitioner's manhood. In light of such trivial motive, there was some evidence to support the Board's determination that the offense was especially heinous, atrocious or cruel.

The Board determined the factors that weighed most heavily against suitability were Petitioner's attitude, his mental state, and his lack of insight regarding the commitment offense. Cal. Code Regs., tit. 15, § 2402(b). Petitioner did not fully accept responsibility for the crime. Although he had to remove the safety, chamber a round in his handgun, and pull the trigger, he still insisted that the killing was an accident. He prevented the victim's friend from aiding the victim, and he seized the keys to the vehicle. In his statements to the psychologist, he insisted that he fired accidentally because he was nervous. When questioned regarding his remorse and his responsibility for the crime, Petitioner would invariably turn the conversation back to how he was affected. The Board noted that Petitioner appeared to be very self-absorbed and self-centered. "An inmate's version of the offense may indicate a lack of insight and provide a nexus between the offense and his current dangerousness." In re Shaputis, 44 Cal.4th 1241, 1260 (2008). In this case, the Board determined that Petitioner did not accept responsibility for his actions and lacked insight into the causative factors of his conduct. The superior court's determination that some evidence supported the Board's finding was not unreasonable.

The Board also found the psychological evaluation unsupportive of release. The reviewing psychologist found Petitioner had very limited insight into the underlying motivation for the crime. He noted Petitioner's thought processes were evasive and vague. He was superficially cooperative. He was unable to accept responsibility and his expressions of remorse lacked genuine feeling. The psychologist concluded that Petitioner posed a moderate risk to recidivate in a violent manner. The psychologist further noted that Petitioner continued to minimize his involvement with alcohol. Although Petitioner had participated in Narcotics Anonymous and Alcoholics Anonymous, his understanding remained extremely superficial. In light of these findings, there was some evidence to support the Board's determination. The state court's determination was not unreasonable.

Finally, the Board found Petitioner's parole plans to be very problematic. Despite having

a serious alcohol problem, Petitioner had no fallback prevention program for his release.  In addition, his job offer was very vague.

The Board also considered Petitioner's positive factors.  He was commended for his participation in self-help programs and his work.  The Board also noted that Petitioner did not have a criminal history and he had remained disciplinary free in prison.  Nevertheless, after considering the factors in favor of suitability, the Board concluded that the negative factors greatly outweighed the positive factors.  The state court determination that there was some evidence to support the Board's 2009 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record.  Accordingly, federal habeas corpus relief is unavailable.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **November 8, 2010**           /s/ **Gary S. Austin**
                                       UNITED STATES MAGISTRATE JUDGE